v. The School Districtof PAetal v. The School Districtof PAetal Good morning. If you see only two judges up here instead of the usual three, the third is in that box. Good morning, Judge Barth. Can you hear me? Good morning, Judge Slaughter. Good morning, Judge Fisher. Good morning. Obviously, you can hear me. Can you see us? I can see you. Oh, great. Okay. It's like that commercial. The rest of you can see Judge Barth. Now, let me just tell you what the process will be today. Because I'm sitting with another panel, my regular panel, as soon as we finish this case, we will, and because Judge Barth is on the video, we can't conference in the courtroom. We could if we had all of you leave, but I don't want to do that. So what we'll do is we will move, and Judge Barth, there's a change in plans. We're going to confer in Judge Fisher's chambers, which is on this floor. So the call by you should be to Judge Fisher's office. Oh, right. Okay? And then the panel, then my panel will come back here, and Judge Fisher's panel at 10.30 will go into the site's courtroom, which is the next door courtroom. That's courtroom number two, assuming that you all care about that. Okay. We will begin with Wayne Moving and Storage v. School District of Philadelphia. Thank you, Your Honor. May it please the Court. My name is Carl Solano. I represent the School District of Philadelphia. At counsel table with me is my colleague, Joseph Anslin, and also in the courtroom is the Deputy General Counsel of the School District, Myles Shore. Your Honor, there was an amicus brief filed in this case by the School Board Association, and its counsel, Stuart Nade, is also present. Judge Slover, may I reserve four minutes of my time for rebuttal? Absolutely. Thank you very much. This is a case about the importance of contracts. The School District of Philadelphia was consolidating its administrative operations in one building. Previously it was in five. And so it hired a relocation contractor to oversee, to schedule, to coordinate that move. And that contractor, Facility Strategies, hired a subcontractor, the plaintiff, Wayne Moving, to do the actual moving work. These were fixed-price contracts. Both parties have been paid the fixed price. But Wayne says that because of schedule disruptions, elevator breakdowns, other things, the work costs more than its fixed price. In fact, it costs twice as much. And so Wayne has sued for that additional amount, but it didn't sue the company with which it entered the contract facility. Rather, Wayne sued the School District. And it didn't sue for breach of contract. It sued for unjust enrichment. We contend that the district court erred in entering summary judgment on behalf of Wayne on those theories because, as a matter of law, the school district could not be held liable to Wayne as a matter of contract law, unjust enrichment law, and also public school law. And let me begin with contracts, because I believe it is the most fundamental defense that we have here. Wayne covenanted that it could not, would it not, sue the school district if it was not, if it did not receive full payment for its work? Shouldn't we assume that Wayne was aware of the provisions of the facilities contract? And if it didn't have a copy of that contract, wasn't it its responsibility to get one? Your Honor, Wayne was obligated to get one. But before we get to, that's an issue of incorporation by reference, which we talk about at great length. But before we get to that, if I may, to answer your question, yes, it was obligated to get the provision, and Wayne should have known about the provision. The incorporation clause was paragraph one of Wayne's contract. The provision in the relocation contract was entitled subcontractors, and Wayne obligated itself in its contract to review the terms of the incorporated relocation contract to see what was in there and see if there were any problems with it. And Wayne didn't do that. So, yes, Your Honor, it was obligated to find that provision, to know about that provision. But before we even get there, Wayne signed an agreement to be bound by this provision that it could not sue the school district as a condition to bidding on the contract in the first place. When my concerns, if I may interrupt you, Mr. Solano, one of my concerns has been that, according to the record, not only the contractor but the school representative represented to Wayne that these extra monies that it now claims would be paid. And what I've been wondering about is what would have happened or how would Wayne have handled it if it conformed to the contract completely, the work not having been done because it did not have the time and the materials to do it due to the fact that there were delays. Wouldn't it have looked to the school representative and said, look, is this okay for me to do? I know what I'm obligated to under the contract, but you're telling me I can go ahead and I'm going to be paid for it, which is what the record indicates happened. What alternative would he have had? And I say he. I meant Wayne. Judge Garth, first of all, there are a number of contract provisions that say what's supposed to happen in this situation. Wayne is to look to facility for direction. Facility is then to look to the school district for direction. There are provisions that say that additional work must be approved by work orders, change orders. Judge Garth, the amount at issue in this case is $830,000. There was never a request for a change order. There was never a change order for $830,000. There was one earlier one for 300-and-some-thousand dollars, and the facts in the record are disputed as to what the impact of that was, what the parties intended. But no one ---- No, go ahead. Finish your point. I was just going to say, there's never been a change order for the $830,000. That's one answer, but I'm sorry, Judge Glover. Go ahead. Yeah, I just wanted to ask, because I wondered about that. It's not clear to me. Was the $380,000 work encompassed in the $800,000 work, or is that separate, or do we need discovery for that issue? Your Honor, I think there's going to have to be discovery to sort that out. Some of the, what Your Honor called the $380,000 work, is in the 840. I qualified my statement just now because it's not really $380,000. That's the amount that is listed on the work order. The testimony by Mr. Seifert and Ms. Farillo is that that was an estimate subject to negotiation. And to the extent that you can try to trace the numbers back into the $830,000, you see that they ended up lower. So that it's not really $380,000 going into the $830,000. The numbers are more jumbled than that. But if I may return to Judge Clark's ---- On this whole pass-through contract issue on the incorporation, does it make any difference that the prime contract was actually signed after the subcontract? I mean, you had a subcontractor, Wayne, who signs a contract with Facilities Strategies. There wasn't any prime contract in place at that point. Your Honor, I thought they were entered into around the same time, but again ---- The record shows that the prime was entered into later. Okay, but the record also shows that the prime contract was available and the terms of the prime contract were available. But, Judge Fischer, if I can come back to my earlier point where I began, even putting aside this whole incorporation point, there were terms and conditions for bidding on this contract that Wayne agreed to before it entered into its contract as a condition to bidding. One of those terms and conditions is paragraph 10b, which says, The school district shall have no obligations to any subcontractors. Subcontractors shall have no recourse to the school district for any payment under such subcontracts. Judge Fischer, Wayne and Facility jointly made their proposal to bid on this contract. They were required to sign a document saying that they acknowledged those terms and conditions and agreed to them. Wayne's document was signed by its commercial manager, Skip McHugh. It's at page 305 of the appendix. And so even if we don't get to incorporation by reference, there is a binding document by Wayne assenting to the fact that it could not sue the school district. And if I may anticipate just the next part of that, that request for a proposal became an appendix to Wayne's subcontract, so it was not superseded. It is appendix A to the Wayne subcontract. But under Pennsylvania law, you have a pretty heavy burden, do you not, to establish that an exculpation condition in an RFP would be approved under Pennsylvania law? Judge Fischer, I respectfully disagree in the characterization of an exculpation provision. All that this says, as I understand an exculpatory clause, it is a situation where a party has liability, generally tort liability, and the party says, but you can't sue me for that tort anyway. We don't have that here. This is a clause that says you're going to enter into a contract with my general contractor, and if you want redress, you sue my general contractor, you can't sue me. There's nothing unusual about that, and there's nothing about it that makes it exculpatory. As a matter of fact, it's standard in construction contracts. And the idea of the trial court opinion that because this is a contract that is tiered or layered so that you have first a general contractor and then a subcontractor and that somehow that gives the subcontractor a right to sue the owner for unjust enrichment, would, if accepted, revolutionize construction law. All of a sudden, every owner of property is going to be subject to unjust enrichment claims by subcontractors, and that has never been the case. Pennsylvania allows such a claim, do they not, under Pennsylvania law? No, Your Honor. Pennsylvania generally, as a matter of fact, we were a bit surprised because we tried to look for cases like that, and there are no cases where subcontractors have sued owners for unjust enrichment. Well, what about Meehan v. Shelton? Your Honor, in Meehan the plaintiffs' case. Meehan. And the case subsequent there to the case of, and there's another case. Hill, Your Honor. Hill. Yeah, D.A. Hill. I mean, they certainly, they recognized the theory. They just didn't find that it applied in those cases. Your Honor, first of all, Meehan and Hill are not cases where the subcontractor sued the owner of the projects. Meehan and Hill are cases where some third party that had no contractual relationship whatsoever with the project suddenly became the owner through, in the case of Meehan or, excuse me, in the case of Hill, it was a mortgage foreclosure. And the court there looked to Restatement 110, Restatement of Restitution, and said in that situation, we are going to set up certain rules as to when there can be unjust enrichment recovery in that kind of case. But it was not a case against the owner. And the Restatement 110 provision, by the way, is in a part of the restatement that is associated with all of these rules that say you cannot cover for, recover for unjust enrichment if the case is already, if the work is already covered by a contract. Mr. Solano, your red light. My time is up. Thank you, Your Honor. As you know, you're an experienced lawyer. As you know, you don't get to do all your arguments. But we'll get you back on rebuttal. Thank you, Judge Solano. We don't do what the Supreme Court does. You can talk about anything on rebuttal. You're not limited to what your adversary. Thank you very much, Your Honor. Thank you. Good morning. My name is James Golden. I represent Wayne Moving. This is not a contract case, as Mr. Solano says. This is an unjust enrichment case. But isn't that, isn't your claim for unjust enrichment by necessity based on an implied contract? That happens to be the legal phraseology for what unjust enrichment is. So it's not truly accurate, then, for you to say this is not a contract case. It depends on how, what kind of weight you want to give to the legal phraseology. The way the unjust enrichment cases work is that something happened that makes it unfair for some party to retain a benefit. And then some of the cases, when they talk about it, after they complete the unjust enrichment analysis, say, now we have a quasi-contract. And, of course, one of the things about legal phraseology is when courts use words like quasi, they mean it's not really a contract, but we're going to pretend it's a contract. It's just like a contract. In the end, it works like a contract because somebody has to pay for the services that were provided. So the principles of unjust enrichment really are very simple. When parties do not have a contract, as is the case here, if a party is unfairly benefited, they have to pay for the amount of the benefit. And this is a case that, unlike some of the more common unjust enrichment cases, is really rather simple. The more common ones happen. The typical one is a case where a lender forecloses on a piece of property. The lender has advanced, say, as in the instance of, I think, Guy against Eberly. The lender has advanced, say, a million dollars. Out of the four million that was to be loaned, the project has been almost completed, as in Guy against Eberly, so say $3.5 million worth of work was done. Contractors and subcontractors are unpaid to the tune of $2.5 million. The lender gets an asset worth $2.5 million, but the lender only advanced a million dollars. Guy against Eberly says, in that case, the lender has been unjustly enriched by about $2.5 million, so the lender has to give up that money. There are other cases. I think this is the pattern in Hill. In Hill, I think the situation was there was a lawsuit against the lender, and in that case it happened that the lender had fully advanced on the loan. So the asset that the lender had foreclosed on, the construction, was exactly what the lender had paid for, so there was no unjust enrichment. Mr. Golden. Mr. Golden. Oh, I'm sorry. Go ahead. No, Judge Garth, you go. Thank you, Judge Slaughter. I am very interested in knowing how you surmount Section 508. Good. Let's start the discussion on that. Go ahead, Leonard. For the first time, I may get a second on a vote, then, of what we want to talk about. I don't understand how your client can possibly get around the Pennsylvania statute, which says that the affirmative vote of a majority of all members of the Board of School Directors in every school district, showing how each member shall be required in order to take action on the following subjects, creating or increasing any indebtedness, entering into contracts of any kind where the amount involved exceeds $100. Failure to comply with the provisions of this section shall render void the vote of the Board of — no, wait a minute, I have a typographical error here, so I can't read that word. But it renders the entire — He knows what 508 says. The vote of the Board of Directors void and unenforceable. Now, how do you get around 508? There are two ways, and really it's very straightforward and simple. The first is that one of the things that 508 prohibits is it prohibits a representative from a school district to enter into a contract without the approval of the school board. There was no contract here. That's the whole point. If Frank Seifert, who ran this project, which began at $85 million and then grew to $107 million, if Frank Seifert — now, I don't know how that $22 million happened, but if he had gone to Wayne Moving and said, I want to enter into a contract with you, it would be a different situation. That might be prohibited by 508. We don't even have to get to that point because the school district did not enter into a contract. That's what's prohibited by 508. I had a similar question. The district court held that Wayne was not precluded, the client, from recovering bisection 508 because no court held that 508 applied in the absence of a contract between the parties. Is there any such holding? Do you have a case that says that? Well, no, what Judge Stengel was saying is that there is no case in which 508 prohibited a recovery when there is no contract. So the answer is there's no case. So there's no case that supports the district court's explanation, is there? I'm sorry. I didn't follow the question. There's no case that supports the district court's holding, is there? No, no. He was saying the opposite. He was saying there is no case that prohibits or precludes the district court's finding. That, of course, assumes that we agree with you that an implied contract is not a contract. Yes. If the court finds that the quasi-contract description that follows the end of an unjust enrichment analysis is the kind of contract that 508 is intended to prohibit, then I have to go to my second argument. But when you read the 508 ---- Then you lose, don't you? No, I don't.  Why? Well, even if you find that it is the kind of contract that might be ---- that is prohibited by 508, the principle of equitable estoppel, and there is a direct equitable estoppel case, says that the school district exactly ---- a school district exactly cannot do what they did in this case. They can't have somebody who is authorized to spend $107 million directly tell his agent, who is Sally Ferullo, you tell Wayne Moving to go ahead and do $830,000 worth of work because it's going to save us more than that. He's got his fingers crossed behind his back and say, I'm not going to pay you because of 508. You will acknowledge, and you, I think, jointly stated that, you'll acknowledge that they never directly said that to Wayne Moving. No. There's no evidence in the record that says that they directly said that to Wayne  No. That's absolutely right because they were dealing in the contractual sequence. Frank Seifert talked to Sally Ferullo. He testified at his deposition. There are citations in my brief where he says, this is great. This is the first time I worked with a real moving consultant. I didn't get involved in that stuff. Is it clear that Seifert approved proceeding with services that reached the $800,000 level? Is that clear from the record, or is that something that a finder of fact might have to decide? The answer is that it's clear, and I'll show you where it's clear. But I also want to call the Court's attention. It's clear from the testimony of your client, but does that necessarily make it so? Well, I'll show you where it's clear from the testimony from Sally Ferullo, because, very importantly, Frank Seifert didn't testify at the damages trial. But the case in which there is equitable estoppel is a case called Derry School District against subcontractor in which there was a case. Is that in your brief? Yes, it is. And that's a case where the school district said, go ahead, do this, do this, do this. There was extra work. The contractor said, well, okay, now you have to pay me. The school district said, well, we're not going to because of 508. And the Court said, no, no, no, you can't deal that explicitly and not pay. With regard to Judge Slover, to your question, at the damages trial, Sally Ferullo testified that she had conversations with Mr. Seifert, and she told to Mr. Seifert She's from Facilities Strategies, right? Yes. She's not from the school district. Correct. Mr. Seifert is from the school district. And she testified at the trial. One of the quotations on page is page 9 of my brief. She says to Mr. Seifert, this is Sally Ferullo's testimony, what do you want me to do, do you want me to just stop work right now? He said, oh, no, no, no, you've got to finish, we've got to finish. So I said, okay, we'll finish, I'll get it done, whatever it takes. There was also a conversation that she testified to. Oh, this is Mr. Seifert's. This is Mr. Seifert's testimony on page 33 of my brief. This is Mr. Seifert, the school board representative who is in charge of the contract. This is the way we have to do it on projects of this sort. If you'll permit me to explain, we have an extensive capital program where we build schools. This is done all the time on extra work orders. The reason is it needs to be in the field. You can't wait up to two months, it takes the school reform commission, to get process and approve the work orders. It's just, if not policy, it's the way it's done in the district where they're approved in the field and then they're presented to the SRC for authorization. This is what Sally Ferullo said. Mr. Golden, if you will, just a moment. There had been a representation made by your friend who spoke to us first that there had been, and by Judge Fischer, who was the examiner of the record, that there were no extra work orders that were ever filed. In addition to that, I have been looking at section 3.9.5 and section 8.2 of the relocation contract, which is completely against the position that you're taking, because it says that any such person as your client waives any claim or cause of action against the school district arising out of a subcontract. Further, none of them shall have any right or claim against the school district for any costs or damages arising from the performance of any of their services. What do you do with those two aspects of the questions? That pertains to the incorporation argument. Those two provisions are contained in the school district facility strategies contract. The case law is that there are some kinds of provisions, like arbitration provisions, that can be generally incorporated. Cases that are exculpatory in nature, like those provisions, cannot be incorporated by a general incorporation provision. If the owner wants to incorporate and apply any kind of exculpatory clause in his contract with the contract and impose it on the subcontractor, the subcontractor has to sign it. One of the cases that deals with this is a case called Capricorn Power. It's cited in my brief. In Capricorn Power, there was a specific waiver of a right that was signed by the subcontractor. So when you have a general incorporation provision, it does not apply to incorporate the kinds of exculpatory clauses that Your Honor is referring to. Did your client file any of the work orders which Mr. Solano said had not been filed? Well, I'm not sure what it would mean to file them. But as the extra work was occurring, there was one document that was prepared. He said that there have to be work orders that have to be filed. I just want to know because he's coming back on rebuttal, and I would like to know whether or not there is a factual issue as to whether work orders were filed or not. There was one work order that was prepared by Facility Strategies. It was signed by Facility Strategies and by the school district. The amount on it is $384,000. That is included in the $830,000 worth of work. That might have been an issue for the damages trial, not for the liability summary judgment. The school district chose to present no evidence at the damages trial. I have some questions about what may be questions of fact as to the additional costs. You claim the additional costs were because elevators that you had examined in advance were not available when needed by Wayne to remove the contents of the spread out buildings. You claim that you had assumed that you would be working with the movers, and instead you learned on the job that it was the carpenters that insisted on doing this, and the carpenters charged more than movers. Whose responsibility are those additional costs? Did the district court make findings with respect to those matters? The way it happened, Judge, is the school district never, and this is really important given that we're on appeal, the school district never defended on those grounds. They made a motion for summary judgment. We made a cross motion for summary judgment that dealt only with liability based on the legal applicability of unjust enrichment, the applicability of Section 508. And the appropriation. So you say damages was never at issue. And then it was not at that point. Then the judge scheduled the damages trial because there certainly were potentially disputed material facts as to damages. Then we had a damages trial, which would have been the opportunity for the school district to contest whether we were entitled to all of the $830,000. We never would have contended and never did contend that those facts were undisputed. Did the district court make findings? He didn't have to because the school district put on no evidence at the damages trial. We put on our evidence. Sally Ferullo testified. She explained what happened. Go ahead. Your red light's on. I know. Finish the question. Only answering the court's question. No, I understand. Finish your answer. Your point, Judge, is very important because that is a potential issue of material fact. Okay. But they didn't present evidence at the trial. Thank you. I think I covered Judge Fischer's question. You did, but the red light came on and indirectly you've at least answered my question. Okay. Thank you. Thank you very much. We'll hear rebuttal. Thank you, Judge Gorth. I didn't forget about you. Thank you. Mr. Solano, is it true that damages are not an issue? No, Your Honor. Damages were very much an issue. And I think it is telling, Judge Sloviter, if you take a look at the transcript of the court's hearing on damages, there were questions asked by Mr. Schor, who handled the damages hearing for the school district, of questions such as, did you file proper work orders here? And aren't the rates that you're charging in excess of the amounts of the contract? And each step when that happened, Mr. Golden objected and said, those are breach of contract issues. We're here on unjust enrichment. Those contract defenses don't make any difference here. And the district court sustained those objections? The district court allowed the question to be asked and then in its decision, in essence, agreed with Mr. Golden because he allowed the recovery despite the lack of change orders. He allowed the recovery of, at rates, labor rates that were in excess of the amounts in the contract. So it did so. He didn't sustain the objection, but we lost the war. Did you raise that as an issue before us? I can't remember. Yes, Your Honor. That is in the briefs. Mr. Solano, Mr. Golden says that an action for unjust enrichment is one that's not based on a contract. Do you agree with that? No, Your Honor. An action for unjust enrichment is based on a contract implied by law. That is what the Moore case says, which we cited in our brief. And, Judge Fisher, you know, Mr. Golden and the trial court say that Section 508 doesn't apply to unjust enrichment claims. It does in every case that is ever considered the issue has so held. We went back to 1911 and the very first case. I know you went back almost 100 years. We did. But in that 100 years, you never had the Supreme Court of Pennsylvania say clearly that it doesn't apply. We don't have the Supreme Court of Pennsylvania talking about unjust enrichment. We have the Superior Court of Pennsylvania saying it. But we have to predict what the Supreme Court says. You do indeed, Your Honor, but I believe that opinions by the Superior Court and the Commonwealth Court are persuasive in the absence of any statement to the contrary by the Supreme Court. And there has been no indication in the Supreme Court opinions that they would disagree with that. In fact, Your Honor, I invite you to look to the Yoder case, which is a Supreme Court decision in the 1960s. It doesn't discuss unjust enrichment, but the analysis is identical to all of these other cases. And if unjust enrichment were permitted, I mean, that's a case where you had a bunch of school directors telling a contractor to enlarge a playground, and after the contractor did it, the school board didn't pay for it. And the Supreme Court said, sorry, 508 applies. I mean, when you look at 508 and you want us to apply 508, I mean, it talks about, I mean, we have to, you know, look at the words of the statute. It says they take action entering into a contract of any kind. Yes, Your Honor. Now, accepting your argument that an implied contract is a contract, how do you get the fact that there was an entering into a contract, when here there's clearly no contract between the school district and Wayne Movement? Because, Your Honor, what you're trying to do is indeed, as I think Your Honor's earlier questions say, you're trying to imply a contract, a de facto contract. The analysis of these cases, if you go back to the early cases, talking about unjust enrichments, what they say is they actually don't even focus so much on contract of any kind. What they focus on is that if we were to allow you to recover for unjust enrichments, we're essentially writing the statute off the books. Because that just means that, okay, anybody can come in and say, well, I don't have an express contract, but I did the work anyway, so pay me. And therefore, we can circumvent the terms of the statute. And what the courts have said is we just can't allow that to happen. And so that's how they reached that result. Thank you. That's a very good place to stop. Thank you, Your Honor. Thank you. The red light is on. Thank you, gentlemen. You both argued well. We will take the case under advisement. And for the benefit of those people in the audience and Judge Garth, the panel will leave and we will conference. And then my panel, my regular panel, will come in at 1030 for the other cases. Thank you.